**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Sally Robbins, | ) | No. CIV-03-1224-PCT-JAT |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court are the Plaintiff's Motion to Amend/Correct Complaint (doc. 107), the Plaintiff's Motion to Substitute Party (doc. 107), and the Defendant's Motion to Disqualify Counsel (doc. 119). The Court now rules on the motions.

I.  Background

On June 27, 2003, Plaintiff Sally Robbins filed a Complaint in the United States District Court for the District of Arizona. The Plaintiff brought the Complaint under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.,* alleging medical negligence on the part of the Defendant, United States of America, that resulted in personal injuries to the Plaintiff. Specifically, the Plaintiff alleges that as a result of the Defendant's negligence the Plaintiff suffered permanent injury to her pancreas and resulting pain and suffering, loss of wages, medical expenses, and permanent physical disability.

On May 22, 2005, approximately three weeks before trial, the Plaintiff passed away. The Plaintiff is survived by her children, Renee and Paul Montz as well as her parents,

1  Darrell and Helen Robbins. The Plaintiff is also survived by her significant other, a man by
2  the name of Troy Gandy. Although the Plaintiff and Mr. Gandy were apparently partners for
3  more than ten years, they were never married. Troy Gandy was subsequently appointed as
4  the personal representative of Sally Robbins' estate with the consent of the decedent's
5  surviving children.

6  On May 24, 2005, the Defendant filed a Notice of Suggestion of Death of the Plaintiff.
7  On June 1, 2005, the Court held a status conference. The Court vacated the final pre-trial
8  conference to allow the parties to obtain the report of the medical examiner concerning the
9  cause of death. At a subsequent status conference on June 29, 2005, counsel for the Plaintiff
10 advised the Court that the parties were still awaiting the medical examiner's report and
11 notified the Court that the Plaintiff intends to file a motion asking leave to amend the
12 Complaint.

13 Ultimately, the medical examiner concluded that the Plaintiff's death was a result of
14 a toxic level of combined prescription medications, some of which the Plaintiff was
15 undisputedly taking because of her pancreatic problems.

16 On July 1, 2005, counsel for the Plaintiff filed a Motion to Amend Complaint and
17 Substitute Parties. The motion asks leave of Court to file an Amended Complaint alleging
18 a survival action pursuant to A.R.S. § 14-3110, and an action for wrongful death pursuant
19 to A.R.S. § 12-611, *et seq*. Counsel seeks to substitute, in place of the decedent, Troy Gandy
20 as personal representative of the estate of Sally Robbins, on his own behalf, on behalf of the
21 estate, and on behalf of Renee Montz, Paul Montz, Darrel Robbins, and Helen Robbins
22 (beneficiaries of the estate).

23 The Defendant opposes the motion to amend on the grounds that: (1) there is no
24 subject matter jurisdiction over the First Amended Complaint because the statutory
25 beneficiaries did not exhaust their administrative remedies for the alleged wrongful death
26 claim; (2) the amendment is prejudicial to the Defendant; and (3) the proposed amendment
27 names improper parties.

28

On September 12, 2005, the Defendant filed a Motion to Disqualify Counsel. The Defendant argues that Plaintiff's counsel has a conflict of interest and cannot represent the personal representative of the estate and estate beneficiaries. The Defendant is concerned that the personal representative of the estate has a personal stake in the outcome of the lawsuit, and that counsel has already incurred fees as a result of his prior representation of the decedent.

On November 18, 2005, the Plaintiff filed a "Notice of Filing Forms 95," which states that the Plaintiff has served, or will serve within a few days, administrative claims with the appropriate agency to satisfy any potential exhaustment requirement with respect to the wrongful death claim alleged in the First Amended Complaint. The Court has not received an update as to whether the claims have been denied.

On February 6, 2006, the Court heard oral argument on all the pending motions.

II.     Legal Standard and Analysis

As an initial matter, the Court will address the pending motion to disqualify Plaintiff's counsel. The Defendant contends that if the Motion to Amend Complaint is granted, this Court will be divested of subject matter jurisdiction. Ordinarily, the Court would decide the jurisdictional issue first, however, if counsel is disqualified, his motion will be stricken and the jurisdictional issue will be moot.

   A.     Motion to Disqualify Counsel

Attorneys are bound by the local rules of the court in which they appear. The District Court of Arizona has adopted the Rules of Professional Conduct approved by the Supreme Court of the State of Arizona. *Research Corp. Techs., Inc. v. Hewlett-Packard Co.,* 936 F.Supp. 697, 700 (D. Ariz. 1996). In applying these ethical rules in the context of motions to disqualify opposing counsel, the Arizona Supreme Court has counseled that "only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court In and For Maricopa County,* 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984). The Court has also

advised reviewing courts to "view with suspicion" motions by opposing counsel disqualify an attorney based upon a purported conflict of interest with that attorney's own client or an "appearance of impropriety." *Villalpando v. Reagan,* 211 Ariz. 305, __, 121 P.3d 172, 175 (Ct. App. 2005) (quoting *Gomez v. Superior Court,* 149 Ariz. 223, 226, 717 P.2d 902, 905 (1986)).

Not only is the burden on the moving party to show sufficient reason why an attorney should be disqualified from representing his client, but whenever possible the courts should attempt to reach a solution that is less burdensome to the client or clients than disqualification. *Alexander,* 141 Ariz. at 161, 685 P.2d at 1313. Additionally, it should be noted that the use of a motion to disqualify as a tactical tool is frowned upon. *Alexander,* 141 Ariz. at 165, 685 P.2d at 1317.

Here, the Defendant argues that John Pepper Leader, counsel for Plaintiff Sally Robbins, must be disqualified because subsequent to the death of Ms. Robbins, he has been retained to represent Troy Gandy, individually and as the personal representative of the estate of Sally Robbins, as well as the beneficiaries of the estate of Sally Robbins (Renee Montz, Paul Montz, Darrell Robbins, and Helen Robbins). The Defendant suggests that such representation violates ER 1.7 which governs conflicts of interest when a lawyer undertakes representation of multiple clients at the same time. *Research Corp. Techs., Inc. v. Hewlett-Packard Co., 936 F.Supp.* 697, 701 (D. Ariz 1996) (stating that ER 1.7 is the standard for evaluating conflicts of interest).

Assuming for a moment that there is a conflict of interest, disqualification is still not a result favored by the Court. Generally, a violation of ER 1.7 would create an issue for the State Bar of Arizona, but would not be a basis for disqualification. It is not this Court's role to impose sanctions for the ethical obligations imposed by, and policed by, the State Bar of Arizona. In any event, because a Motion for Disqualification has been raised by the Defendant, the Court will consider the particulars of the alleged violation and the circumstances of the case, before determining that the harsh sanction of disqualification is

1 warranted. *Research Corp. Techs, Inc.,* 936 F.Supp. at 703.

2 Concurrent representation of clients does not become a problem unless the interests
3 of the clients are adverse or become adverse during the trial. *Alexander v. Superior Court*
4 *In and For Maricopa County,* 141 Ariz. 157, 163, 685 P.2d 1309, 1315 (1984). The same
5 can be said of consecutive representation (representation alleged to be adverse to a former
6 client). There has not been any evidence presented by the Defendant that Troy Gandy's
7 interests are adverse to Renee Montz, Paul Montz, Darrell Robbins, Helen Robbins, or the
8 deceased. In fact, it appears to this Court that Mr. Leader's clients have a mutual interest in
9 this lawsuit.

10 The beneficiaries will benefit in several ways from continued representation by Mr.
11 Leader. The Defendant agrees that Mr. Leader litigated this case on behalf of Sally Robbins
12 for more than two years. Both sides of this litigation have undertaken substantial discovery
13 and expended a considerable amount of time and money preparing for the trial. Mr. Leader
14 is already familiar with the facts and evidence that underlie this case. Allowing the attorney
15 or attorneys who are most knowledgeable about the facts and the evidence to continue to
16 represent the beneficiaries of the estate, and the representative of the estate, will help avoid
17 unnecessary cost and delay to the parties. These facts weigh in favor of continued
18 representation. *Alexander,* 141 Ariz. at 166, 685 P.2d at 1318.

19 The Defendant concedes that the beneficiaries selected Troy Gandy to be the personal
20 representative of Sally Robbins' estate. The fact that an action for wrongful death is brought
21 by the personal representative on behalf of the statutory beneficiaries, does not alter the
22 rights of the beneficiaries. *Sentry Ins. v. Pinal County Superior Court,* 156 Ariz. 557, 558,
23 753 P.2d 1213, 1214 (Ct. App. 1988). At this point in time, Troy Gandy does not appear to
24 have any interest in this lawsuit that is adverse to the interest of the statutory beneficiaries.[1]

---

26 [1] As discussed *infra* sections II.B.1. and II.B.2, Troy Gandy cannot bring a wrongful
27 death claim on his own behalf and does not have a financial stake in the outcome of this litigation.

- 5 -

1  Similarly, Mr. Leader's representation of Mr. Gandy does not appear to be adverse to the
2  interests of the beneficiaries of the estate. In fact, as the Defendant points out, counsel and
3  the representative of the estate both have fiduciary duties to the statutory beneficiaries.
4  *Wilmot v. Wilmot,* 203 Ariz. 565, 58 P.3d 507 (2002).

5  Because it does not appear that there is a substantial risk that Mr. Leader's
6  representation of the beneficiaries and the representative of the estate would be materially
7  and adversely affected by his own interest or his duties to another current client, a former
8  client, or a third person, the Defendant's Motion to Disqualify is denied. The Court will now
9  move to the merits of the Plaintiff's pending motion.

10        B.      Motion to Amend/Correct/Substitute Party

11  The Plaintiff has moved to amend the Complaint to allege causes of action under both
12  A.R.S. § 14-3110, Arizona's survival statute, and A.R.S. § 12-611, Arizona's wrongful death
13  statute. The survival action seeks economic damages for the lost earnings of the decedent.
14  The survival claim is asserted by Troy Gandy, in his capacity as the personal representative
15  of Sally Robbins' estate, on behalf of the estate. The wrongful death claim seeks an
16  unspecified amount of damages for loss of future income, economic loss, loss of
17  companionship, and pain and suffering. The wrongful death claim is asserted by Troy
18  Gandy, in his capacity as personal representative of Sally Robbins' estate, on behalf of
19  himself and the statutory beneficiaries.

20        1.      Proposed Plaintiff(s)

21  The Defendant argues that the First Amended Complaint, as proposed, improperly
22  names the personal representative of Sally Robbins' estate as a party in the wrongful death
23  claim. Wrongful death is a purely statutory cause of action and must be brought in the names
24  of the persons to whom such right is given by statute. *Lingel v. Olbin,* 198 Ariz. 249, 253,
25  8 P.3d 1163, 1167 (Ct. App. 2000); *Knauss v. DND Neffson Co.,* 192 Ariz. 192, 199, 963
26  P.2d 271, 278 (Ct. App. 1997). Arizona's wrongful death statute provides that a personal
27  representative of the decedent's estate has the authority to bring a wrongful death claim, as

1 would a surviving spouse. A.R.S. § 12-612(A); *Sentry Ins. v. Encinas,* 156 Ariz. 557, 558, 753 P.2d 1213, 1214 (Ct. App. 1988). Monies received by the personal representative are for the benefit of the statutory beneficiaries, who are the real parties in interest. *Sentry Ins.,* 156 Ariz. at 558, 753 P.2d at 1214.

The only proper statutory plaintiffs in a wrongful death action are the: (1) surviving spouse; (2) parent or guardian; (3) **personal representative of the deceased person on behalf of the surviving husband, wife, parents or children**; or (4) if none of these survive, the decedent's estate. A.R.S. § 12-612(A) (emphasis added); *Knauss,* 192 Ariz. at 200, 963 P.2d at 279. The estate itself cannot be the beneficiary of a wrongful death action if there is a surviving spouse, parent, or child. *Knauss*; 192 Ariz. at 200, 963 P.2d at 278-79; *Sentry Ins.,* 156 Ariz. at 558, 753 P.2d at 1214. However, the statute does allow the personal representative of the estate to bring a claim on behalf of the surviving parents, children, and spouses. A.R.S. § 12-612(A).

The Court disagrees with the Plaintiff's argument that the personal representative of the estate can bring a wrongful death claim on behalf of himself, as the decedent's significant other. This Court must adhere to the plain language of the A.R.S. § 12-612. *Knauss*; 192 Ariz. at 200, 963 P.2d at 279. The statute only allows the personal representative of the estate to recover monies in a wrongful death action **on behalf of the surviving husband, wife, parents or children.** A.R.S. § 12-612(A). Because Troy Gandy is *not* a parent, child, or spouse of the decedent, he is not a statutory beneficiary and cannot bring a wrongful death claim on behalf of himself.

Additionally, because there are surviving parents and children in this action, the estate itself cannot be a beneficiary. In other words, Mr. Gandy cannot claim any damages on behalf of the estate in the wrongful death action because there are surviving parents and children. A.R.S. § 12-612. The fact that the Plaintiff died during the pendency of the litigation does not revive any claim her estate would have had if there had been no survivors upon the Plaintiff's death. *Katz v. Filandro,* 153 Ariz. 601, 604, 739 P.2d 822, 825 (Ct. App.

1987).

As personal representative of the estate of Sally Robbins, Troy Gandy does have the authority to bring a wrongful death action on behalf of the decedent's surviving parents and children. Thus, he is a proper party to the proposed First Amended Complaint to the extent that it alleges a claim for wrongful death on behalf of the statutory beneficiaries. Any monies collected as a result of the wrongful death claim would be solely for the benefit of Renee Montz, Paul Montz, Darrell Robbins, and Helen Robbins. Mr. Gandy cannot, however, assert a claim for wrongful death on behalf of himself or the estate.

Regardless of what the beneficiaries had hoped to accomplish by appointing Troy Gandy as personal representative, A.R.S. § 12-612 simply does not give Mr. Gandy the authority to seek damages for his own non-economic losses, or the losses of the estate. The Plaintiff has not cited, nor can this Court find, any Arizona authority that would allow an unmarried "significant other," by statute or common law, to recover non-economic losses resulting from the wrongful death of a loved one. Additionally, causes of action for wrongful death are not "freely assignable." *Lingel v. Olbin,* 198 Ariz. 249, 254, 8 P.3d 1163, 1168 (Ct. App. 2000). Therefore, the statutory beneficiaries cannot contract away a portion of their potential recovery under the wrongful death statute to Mr. Gandy by appointing him personal representative of the estate.

The Court finds that Troy Gandy, as personal representative of the estate of Sally Robbins, is a proper party to the wrongful death claim alleged in the First Amended Complaint. However, he can only bring the claim: (1) in his capacity as the personal representative of the estate of Sally Robbins; (2) on behalf of statutory beneficiaries, Renee Montz, Paul Montz, Darrell Robbins, and Helen Robbins; and (3) only for damages resulting from the aforementioned statutory beneficiaries' alleged injuries.

          2.     Survival of Plaintiff's Claims

The Defendant argues that there is no need to add a wrongful death claim to this because Arizona's survival statute, A.R.S. § 14-3110, allows the decedent's claims to survive

1  her death. Thus, the Defendant argues that the proper course of action would be to substitute
2  the personal representative of Sally Robbins' estate for the decedent, and to allow the
3  personal representative to continue to litigate the Complaint as it was originally brought. The
4  Plaintiff, however, argues that the addition of a wrongful death claim is necessary to
5  encompass the injuries allegedly resulting from Sally Robbins' death.  The Court agrees.

6  The Plaintiff's original Complaint alleges medical negligence and seeks damages in
7  the amount of five million dollars for Sally Robbins' medical and hospital expenses, pain and
8  suffering, and lost wages and income.  According to the Plaintiff, the vast proportion of the
9  damages sought are for non-economic injuries (pain and suffering).  The Arizona legislature
10 decided that once an injured person dies, they cannot receive the benefit from an award of
11 pain and suffering. *Harrington v. Flanders,* 2 Ariz.App. 265, 267, 407 P.2d 946, 948 (1966);
12 *see also* A.R.S. § 14-3110 (excluding damages for pain and suffering of the deceased).
13 Accordingly, the Plaintiff's survival action does not include damages for the decedent's pain
14 and suffering.  The Plaintiff does not dispute this.

15 The Plaintiff does, however, dispute the Defendant's argument that the personal
16 representative of the estate cannot bring any claims on behalf of the estate.  According to
17 A.R.S. § 14-3110, the decedent's personal injury action may be asserted by the personal
18 representative of her estate, on behalf of the estate, providing that "damages for pain and
19 suffering of such injured person shall not be allowed."  Mr. Gandy, in his capacity as
20 personal representative of Sally Robbins' estate, can maintain an action under the survivor
21 statute to recover damages for the estate.  However, those damages are limited to certain
22 economic damages and cannot include any pain and suffering of the decedent, Mr. Gandy,
23 or the decedent's beneficiaries. *See id.*

24 The only way that the Plaintiff can recover non-economic damages is to assert a claim
25 for wrongful death and seek compensation for the pain and suffering of the decedent's
26 surviving parents and children.

27    3.  Subject Matter Jurisdiction over the Wrongful Death Claim

28

- 9 -

1   If the Court grants the Plaintiff's Motion to Amend, the case will go to trial on the
2   same operative facts, and the personal representative of the estate can attempt to recover
3   economic damages on behalf of the estate under the survival statute, and non-economic
4   damages resulting from the same alleged negligent acts on behalf of the surviving
5   beneficiaries. The question now is whether or not this Court has jurisdiction over a claim for
6   wrongful death. The Defendant contends that this Court lacks subject matter jurisdiction over
7   a claim for wrongful death because the proposed parties (the statutory beneficiaries) have not
8   filed an administrative claim related to a claim for wrongful death.

9   Under the Federal Torts Claims Act ("FTCA"), the United States may only be held
10  liable for money damages if a claimant first exhausts his administrative remedies. 28 U.S.C.
11  § 2875(a). A claimant's remedies are exhausted after his claim is presented to, and denied
12  by, the appropriate agency. *Id.* The Defendant does not dispute that Sally Robbins
13  exhausted her administrative remedies with respect to the medical negligence claim and that
14  this Court has subject matter jurisdiction over a survival action. However, the Defendant
15  contends that the statutory beneficiaries are required to meet the exhaustion requirement
16  before they can add a claim for wrongful death.

17  The Defendant argues that wrongful death is a separate and distinct claim from the
18  Plaintiff's medical malpractice claim that involves new parties and new damages, therefore,
19  the new parties must also fulfill the statutory requirement of exhausting their administrative
20  remedies. The Court disagrees.

21  It is true that wrongful death is a separate and distinct claim and is not derivative of
22  a survival action. *Barrigan v. Superior Court of Pima County,* 12 Ariz. App. 402, 405, 470
23  P.2d 722, 725 (1970). However, requiring beneficiaries to re-exhaust administrative
24  remedies every time a plaintiff dies from his injuries during the course of a medical
25  negligence lawsuit would be putting form over substance. The recognized purpose of the
26  FTCA is to provide compensation to those injured by the government's torts. *Blair v. U.S.,*
27  304 F.3d 861, 868 (9th Cir. 2002). The claim presentation requirement is designed to ensure

28

- 10 -

that compensation is provided in a fair and equitable manner, not to provide a "regulatory checklist" that which, if not strictly observed, creates a basis to terminate claims regardless of their merits. *Id.* The notice requirement does not require a claimant to enumerate each theory of liability. *Brown v. U.S.,* 838 F.2d 1157, 1160 (9th Cir. 1988). And compelling a claimant to advance all possible causes of action is overly technical and may frustrate the very purpose of the notice requirement. *Id.* at 1161.

In enacting the notice requirement, Congress sought to ensure that plaintiffs would promptly inform the relevant agency of the circumstances surrounding the claim, so that the agency can investigate the claim and respond accordingly. *Broudy v. U.S.,* 722 F.2d 566, 568 (9th Cir. 1983). The notice requirement of the FTCA was modeled after statutes governing notice of tort claims against municipalities which require minimal notice. *Shipek v. U.S.,* 752 F.2d 1352, 1354 (9th Cir. 1985). Minimal notice is notice that is sufficient to inform the relevant agency of the existence of a claim. *Id.* Similarly, the FTCA's notice requirement is construed liberally. *Id.* A "skeletal claim form," containing only the basic elements of notice of the incident and injury and a sum certain representing damages, suffices to overcome an argument that jurisdiction is lacking. *Broudy,* 722 F.2d at 568.

The Plaintiff's proposed amendments do not divest this Court of subject matter jurisdiction providing that the Plaintiff does not intend to seek damages in excess of five million dollars. *See Blair,* 304 F.3d at 864 (FTCA notice requirement provides that an action cannot be instituted for any sum in excess of the amount of the claim presented to the federal agency). The wrongful death claim asserted in the First Amended Complaint is based on the same core operative facts as the medical negligence claim asserted in the original Complaint and the Plaintiff's prior administrative claim. Therefore, the claim filed by the Plaintiff provided the Defendant with the facts necessary to conduct a full investigation of the circumstances underlying the claim. *See, e.g., Brown,* 838 F.2d at 1161.

The Defendant is correct that the parties will change from the decedent to her beneficiaries, and the damages sought will now exclude the non-economic damages of the

1 decedent and include the non-economic damages of her surviving parents and children. 2 However, the Defendant should have reasonably foreseen that it was possible that the 3 Plaintiff, who alleged medical negligence and severe injuries, might die from her injuries 4 before trial. The Defendant should also have foreseen that should this occur, the claim 5 would have to be amended to include damages arising from the Plaintiff's death. Considering 6 the circumstances of this case, requiring the Plaintiff to exhaust the administrative claim 7 procedure again would serve no purpose other than to delay litigation. *See, e.g., Brown,* 838 8 F.2d at 1161.

9 Taking into account the "generous notice interpretation," the Court finds that the 10 Plaintiff's prior administrative claim was broad enough to put the Defendant on notice of the 11 claims and injuries asserted in the First Amended Complaint. *See, e.g., Goodman v. U.S.,* 12 298 F.3d 1048, 1056 (9th Cir. 2002) (holding that, for purposes of the FTCA notice 13 requirement, a medical malpractice claim presented to the appropriate agency was broad 14 enough to put government on notice of related claim for failure to obtain informed consent). 15 Additionally, it should be noted that the Defendant conceded at oral argument before this 16 Court that the Plaintiff did file a form with the appropriate agency in November of 2005, and 17 that the administrative agency is likely to issue a denial before this case proceeds to trial. In 18 the event the pending administrative claim is denied, or the six month statutory period passes 19 without any decision and the claim is deemed denied, any lingering concern regarding this 20 Court's jurisdiction over the wrongful death claim will become moot.

21     4.  Prejudice to the Defendant

22 The Defendant argues that it will be prejudiced if this action is converted into a 23 wrongful death claim. This Court's discretion to grant leave to amend is "particularly broad." 24 *Chodos v. West Pub. Co.,* 292 F.3d 992, 1003 (9th Cir. 2002). However, when considering 25 a motion for leave to amend, a district court must consider whether the proposed amendment 26 will cause prejudice to the opposing party. *Id.*

27 Here, the Defendant argues that the claims asserted in the First Amended Complaint

28

- 12 -

1  expand the scope of the Defendant's alleged negligence and seek different damages.  The
2  Defendant also argues that if a wrongful death claim is added at this late date, the Defendant
3  will have to undertake further discovery and obtain expert witnesses on all aspects of the
4  wrongful death claim before the case can proceed to trial.

5  While it is true that the Plaintiff did not seek leave to amend until three weeks prior
6  to trial, this is simply not a case of "undue delay" that would cause prejudice to the opposing
7  party.  There is absolutely no dilatory conduct on behalf of the Plaintiff in seeking leave to
8  amend.  The late amendment in this case is solely the result of the Plaintiff's death during the
9  course of litigation.  The Plaintiff did not simply fail to assert a claim or add parties that
10  could and should have been asserted earlier.  No right to assert a cause of action for wrongful
11  death existed until the Plaintiff passed away.  Thus, counsel cold not have sought leave to
12  amend the Complaint to add the wrongful death claim and substitute the real parties in
13  interest at an earlier point in this litigation.

14  The Federal Rules of Civil Procedure themselves provide that they are to be construed
15  "to secure the just, speedy, and inexpensive determination of every action." *Foman v. Davis,*
16  371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962).  It is true that addition of a wrongful death
17  claim may require some additional discovery and trial preparation.  However, this additional
18  trial preparation will have to be undertaken by both sides of the litigation.  More importantly,
19  the need to undertake any additional trial preparation should not come as a surprise to the
20  Defendant.  The possibility that Sally Robbins could die from her injuries prior to trial was
21  a foreseeable consequence of the injuries alleged in the Plaintiff's original Complaint.

22  The Defendant does not provide any persuasive arguments that it will be prejudiced
23  as a result by the addition of a wrongful death claim and the substitution of the real parties
24  in interest.  Requiring the statutory beneficiaries to litigate an entirely separate action for
25  wrongful death based on the same operative facts that are present in this litigation would, on
26  the other hand, be unnecessarily duplicitave and a waste of time, money, and judicial
27  resources.

28

1  While it may not be the Defendant's preference to litigate a wrongful death claim, the
2  Court cannot say that allowing the amendment would in any way be "prejudicial" to the
3  Defendant.  Granting leave to amend a complaint in order to cure deficiencies caused by the
4  death of the Plaintiff during the course of litigation is consistent with the spirit and purpose
5  of the applicable rules of procedure.  Fed. R. Civ. P. 15(a) (leave to amend shall be given
6  freely when justice so requires).  Accordingly, the Plaintiff's Motion to Amend is granted.

7  The Defendant also argues if this case is converted into a wrongful death action, the
8  Plaintiff must comply with requirements of A.R.S. § 12-2604, which governs expert witness
9  testimony in state law medical malpractice cases.  Due to Sally Robbins' death, some limited
10 amount of discovery will inevitably have to be conducted before this case can proceed to
11 trial.  This may or may not include retaining and disclosing additional expert witnesses.
12 However, at this point in time the Defendant's concerns about trial testimony and evidence
13 are premature.  The Defendant can re-raise this issue, if needed, at the final pretrial
14 scheduling conference.

15 Lastly, the Defendant correctly points out that the Plaintiff improperly incorporates
16 by reference allegations made in the original Complaint.  While this is insufficient reason to
17 deny the Plaintiff leave to amend the Complaint, the Court will require the Plaintiff to correct
18 this deficiency prior filing the First Amended Complaint.

19 The Court grants the Plaintiff leave to file a First Amended Complaint that conforms
20 with all of the holdings in this Order.  Accordingly,

21 IT IS ORDERED GRANTING the Plaintiff's Motion to Amend/Correct Complaint
22 and Substitute Party (doc. 107).

23 IT IS FURTHER ORDERED DENYING the Defendant's Motion to Disqualify
24 Counsel (doc. 119).

25 / / /
26 / / /
27 / / /
28

- 14 -

IT IS FURTHER ORDERED the Plaintiff shall draft a First Amended Complaint that is consistent with the holdings in this Order. The Plaintiff shall file the First Amended Complaint within ten days of the date of this Order. The Defendant shall respond according to the applicable rules of procedure.

DATED this 14th day of February, 2006.

_____
James A. Teilborg
United States District Judge